IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL ACTION FILE NO.

BILLY MAC CRUMP,                                4:10-CR-032-HLM-WEJ

Defendant.

## NON-FINAL REPORT & RECOMMENDATION

This matter is before the Court on defendant Billy Mac Crump's Motion to

Suppress Tangible and Derivative Evidence [312] and Supplemental Motion [344].

On September 1, 2011, the Court conducted an evidentiary hearing [346] on those

Motions, the testimony from which has been transcribed [347] (hereafter "Tr.").  On

the basis of the testimony and evidence produced at the hearing, the undersigned

**RECOMMENDS** that defendant's Motions to Suppress Tangible and Derivative

Evidence be **DENIED**.[1]

## I.    STATEMENT OF FACTS

_____

[1] During the evidentiary hearing, defense counsel agreed that Mr. Crump's
Motion to Suppress Statements [313] was moot.  (See Tr. 106-108.)  Thus, the Court
**DIRECTS** the Clerk to **TERMINATE** that Motion.

## A.    The Investigation

During the summer of 2010, Drug Enforcement Administration ("DEA") agents intercepted calls to and from co-defendant Johnny Gregory Alvarez via a court-ordered wiretap of his cellular telephone.  (Tr. 12, 44; see also id. at 36-38.) DEA Special Agent ("SA") Christopher Mueller believed that Mr. Alvarez was involved in obtaining Oxycodone pills from Florida and transporting them to the Northern District of Georgia and other locations for redistribution.  (Id. at 12.)

Based on information gathered through the wiretap, SA Mueller and agents of the Lookout Mountain Judicial Drug Task Force ("Task Force") conducted surveillance in Rossville, Georgia, on June 23, 2010.  (Tr. 12-13, 43-44; see also 18.) Task Force Agent David Gilleland notified SA Mueller that the agent monitoring the wiretap had intercepted information indicating Mr. Crump was leaving Mr. Alvarez's residence in a gray GMC Sonoma pickup truck and would be transporting narcotics. (Id. at 13-16, 36-38, 44-45; see also id. at 69-70, 80-81.)[2] SA Mueller had personally observed Mr. Crump's gray pickup truck parked outside Mr. Alvarez's residence that day and, based on previously intercepted communications, believed that Mr. Crump

---

[2] SA Mueller and other law enforcement officers conducted contemporaneous surveillance of Mr. Crump's vehicle while the telephone calls were being made and during the traffic stop at issue.  (Tr. 15-17.)

was involved in obtaining and transporting Oxycodone pills. (Id. at 13-14; see also id. at 69, 80.)

SA Muller and Agent Gilleland agreed that local law enforcement should attempt to stop Mr. Crump's vehicle. (Tr. 15, 36, 42-43, 45; see also id. at 18.) Agent Gilleland contacted Walker County Sheriff's Deputy Kevin Denny, told him that agents believed Mr. Crump was transporting narcotics, and asked him to develop independent probable cause to stop Mr. Crump's vehicle so as not to reveal the ongoing investigation. (Id. at 15-16, 18, 36-37, 45-46, 59.)

## B.    The Traffic Stop

Deputy Denny was on regular patrol when Agent Gilleland contacted him and requested he initiate a traffic stop of the gray GMC Sonoma pickup truck. (Tr. 45, 48.) Less than five minutes later, Deputy Denny spotted the truck two car lengths ahead of him on Schmidt Road in Walker County, Georgia. (Id. at 49, 51, 59; see also id. at 70.) Deputy Denny observed the truck cross the white line on the outside of the road by approximately two feet, hug that line, and then travel back into its lane before crossing the road's center line twice. (Id. at 49-50, 59-60.)[3] During that time,

---

[3] Mr. Crump testified that he did not believe he had crossed out of his lane. (Tr. 71.) The Court credits Deputy Denny's testimony that Mr. Crump crossed over the side and center lines of the roadway; Deputy Denny was traveling behind Mr.

3

Deputy Denny was able to pass the vehicle in front of him and follow directly behind the pickup truck; he initiated the patrol car's blue lights after traveling an additional one-eighth of a mile.  (<u>Id.</u> at 49-51, 60, 70-71.)  Mr. Crump immediately pulled over in a gas station parking lot.  (<u>Id.</u> at 50-51, 71.)

### C.  <u>Search of Mr. Crump and the Pickup Truck</u>

SA Mueller had been following Mr. Crump's vehicle along with other law enforcement officers; he lost sight of the pickup truck at one point and arrived at the scene soon after Deputy Denny initiated the stop.  (Tr. 14-15, 17, 19, 38.)  SA Mueller parked across the street and observed from his vehicle the subsequent searches of Mr. Crump and the truck.  (<u>Id.</u> at 19-21, 25, 38-39.)

Deputy Denny approached the driver's side of the truck and recognized Mr. Crump as its driver.  (Tr. 51, 72.)  Mr. Crump stated that he had been trying to give his dog (in the passenger seat) water and might have drifted out of the lane.  (<u>Id.</u> at 60.)  Deputy Denny asked Mr. Crump to exit the truck and come to the rear of the vehicle.  (<u>Id.</u> at 52, 72.)  Mr. Crump did so, leaving the driver's side door open.  (<u>Id.</u> at 61.)  Deputy Denny spoke with Mr. Crump and noticed a powdery residue on his lips and tongue.  (<u>Id.</u> at 52.)  In Deputy Denny's experience he has encountered

---

Crump and had an excellent vantage point to view the pickup truck's movements.

people who have eaten illegal substances, such as pills and marijuana, in order to hide them. (Id. at 52-53.) Deputy Denny asked Mr. Crump if he had anything illegal and Mr. Crump stated that he did not. (Id. at 52.)

Deputy Denny asked Mr. Crump for permission to look through the pickup truck; Mr. Crump consented. (Tr. 53-54, 72.) Before beginning the vehicle search, Deputy Denny patted down Mr. Crump for officer safety and recovered a pocket knife from his pants pocket. (Id. at 53, 60-61, 72.) Deputy Denny then went to the driver's side of the truck and began searching the cab while Mr. Crump sat on the truck's tailgate with his dog. (Id. at 54-55, 61-62, 72-73; see also id. at 17, 19-21, 38.) While searching, Deputy Denny glanced at Mr. Crump and noticed that he was fidgeting and feeling around in his pants pocket. (Id. at 54, 61-62, 73.)[4] At about that time, Deputy Redwine and Deputy Donny Brown arrived at the scene. (Id. at 21, 64-65.) SA Mueller also observed Mr. Crump jumping around and digging in his pocket and radioed Deputies Redwine and Brown to ask if they saw Mr. Crump's behavior. (Id. at 21-22, 38.)

---

[4] Mr. Crump testified that he was looking for his cellular telephone, which he usually kept in a holster on his hip. (Tr. 81.) Whether Mr. Crump was feeling around on his hip or in his pants pocket is irrelevant for the purposes of this analysis, as Mr. Crump admits to fidgeting around the area of his pants pocket while detained.

5

Deputy Denny returned to the tailgate and asked Mr. Crump what he was doing; Mr. Crump stated that he was looking for his cellular telephone. (Tr. 54-55, 63, 74.) Deputy Denny asked Mr. Crump for permission to search his pockets; Mr. Crump stood up from the tailgate, turned around, and raised his arms above his waist. (Id. at 20, 24-25, 39-41, 54, 63.)[5] Deputy Denny reached into Mr. Crump's pants pocket and removed nine loose pills. (Id. at 25, 38-39, 54, 63, 74, 109.)

Deputy Denny asked Deputy Brown for help identifying the pills; Deputy Brown determined that they were Oxycodone. (Tr. 54-55, 64-65.) Deputy Denny resumed searching the truck's cab, assisted by Deputy Redwine. (Id. at 63-64, 66, 74-75.) The deputies recovered a spoon, a box of nasal decongestant, and two syringes, but no additional pills. (Id. at 56.)[6]

Deputy Denny then approached Mr. Crump and asked him what the pills were; Mr. Crump stated that they were for his stomach and that he had obtained them in

---

[5] Mr. Crump testified that, upon returning to the tailgate, Deputy Denny directed him to stand up and then searched his pockets. (Tr. 74.) The Court credits Deputy Denny's testimony that he asked and received Mr. Crump's permission before searching his pockets.

[6] Mr. Crump testified that, after completing the vehicle search, Deputy Denny searched his pockets a third time and found an additional Oxycodone pill (ten total). (Tr. 74-75.)

AO 72A
(Rev.8/82)

Mexico several years ago. (Tr. 55, 63, 74.) Deputy Denny advised Mr. Crump that the pills were Oxycodone; Mr. Crump then stated that he did not have anything else to say and wanted to speak with a lawyer. (Id. at 55, 58, 74.) Deputy Denny took Mr. Crump into custody for possession of narcotics without a prescription, handcuffed him, and placed him in the back of a patrol car. (Id. at 55-56; see also id. at 25.)

### D.   Impounding of the Pickup Truck

Deputy Denny informed Agent Gilleland that he was having the truck towed and impounded; Agent Gilleland requested that a "hold" be placed on the vehicle until he released it. (Tr. 56-57.) Deputy Denny asked Mr. Crump if he had a preference as to the tow company that would retrieve the truck; Mr. Crump requested Dodd Brothers Towing ("Dodd Brothers"). (Id. at 33, 56-57, 67, 75.) Mr. Crump was under the impression that, after Dodd Brothers towed the truck, he would be able to retrieve it at any time. (Id. at 76-77.) At that point, the traffic stop had lasted approximately forty-five minutes. (Id. at 57-58.) Deputy Denny did not issue Mr. Crump a citation for failure to maintain his lane. (Id. at 58.)

After the tow truck arrived, Deputy Denny advised the driver (business manager Mark Dodd) that Agent Gilleland would contact him; Deputy Denny then

transported Mr. Crump to Chickamauga and another patrol car transported him to the Walker County Jail (the "Jail"). (Tr. 57-58, 67, 75-76, 84-85.)[7] SA Mueller believed that Dodd Brothers would transport Mr. Crump's truck to a secure tow lot. (Id. at 26, 33-34, 101.) However, because Dodd Brothers' tow lot is not secure, Mr. Dodd towed the truck to his residence. (Id. at 26-27, 34, 84-85, 89, 94-95, 98.)

On June 24, SA Mueller and Agent Gilleland listened to the prior day's conversation between Mr. Crump and Mr. Alvarez that had prompted the traffic stop at issue. (Tr. 14, 19, 100-101.) They determined that Mr. Crump likely was transporting 200 Oxycodone pills in the truck. (Id. at 100-101.) SA Mueller was concerned that the vehicle may have been released to Mr. Crump and directed Task Force agents to impound the vehicle as evidence of a crime. (Id. at 34-35, 68, 86, 101-102.) Agent Gilleland and another officer drove to Mr. Dodd's residence and asked him to transport the vehicle to the Walker County Sheriff's Office impound lot; the truck had been stored at Mr. Dodd's residence for approximately twenty-four hours. (Id. at 86-87, 97, 101.)

---

[7] Mr. Dodd testified that Deputy Denny did not direct him to take the truck to the Jail, but did state that the tow was for the Task Force. (Tr. 92-93, 98-99.) SA Mueller did not place a "hold" on the truck himself. (Id. at 102-103.)

AO 72A
(Rev.8/82)

According to Mr. Crump, he was released from the Jail on June 24 and called Dodd Brothers in order to retrieve the truck. (Tr. 77.) The person who answered the telephone stated that Mr. Crump could not retrieve the truck because someone from the Walker County Sheriff's Office had just called and asked that it be moved to the impound lot. (Id. at 77, 79, 95-97.)[8] Mr. Crump testified that he paid $125.00 for the tows. (Id. at 78.)

On June 26, Deputy Denny returned to work at the Walker County Sheriff's Office and observed the pickup truck in the impound lot with evidence tape across the doors and a blue tarp covering the bed. (Tr. 68.) On June 29, agents searched the vehicle pursuant to a warrant issued by the undersigned. (Id. at 39-40.) SA Mueller testified that he was not aware of any search of the vehicle after it was towed and before his receipt of the search warrant. (Id. at 40.)

---

[8] Mr. Dodd testified that he would have contacted the Walker County Sheriff's Office before allowing Mr. Crump to retrieve the truck. (Tr. 96.)

AO 72A
(Rev.8/82)

## II.    THE INDICTMENT

This case began on July 20, 2010, through a criminal complaint [1] against co-defendants Alvarez and Jesse Wilburn Peardon.  Thereafter, on February 1, 2011, the Grand Jury returned a multi-count Superseding Indictment [53] with a forfeiture provision against thirteen persons, including Mr. Crump.  Count One alleges that Mr. Crump knowingly conspired to possess with intent to distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Super. Indict. Count One.)  Count Six alleges that Mr. Crump knowingly possessed with intent to distribute Oxycodone, also in violation those code sections.  (Id. Count Six.)  Count Eleven alleges that Mr. Crump knowingly conspired to conduct financial transactions involving proceeds from the sale of said substance in violation of 18 U.S.C. § 1956.  (Super. Indict. Count Eleven.)

## III.    CONTENTIONS OF THE PARTIES

Mr. Crump argues that the initial traffic stop was unlawful because he did not violate a traffic law despite Deputy Denny's testimony to the contrary.  (Def.'s Br. Supp. [348] 4-5.)  Defendant also asserts that Deputy Denny's second search of his person was unlawful because Deputy Denny had already retrieved a pocket knife during an initial pat down and a subsequent search was not necessary for officer

10

safety.  (Id. at 5-7.)  Finally, Mr. Crump contends that the Government violated the Fourth Amendment by seizing his truck a second time after it had been released to him; thus, tainting the subsequent search of the vehicle pursuant to a warrant.  (Id. at 7-8.)  The Government responds that officers had probable cause to stop the vehicle and had Mr. Crump's permission to search the truck and his person.  (Gov't Resp. [357] 8-13.)  Likewise, the Government argues that the automobile exception to the Fourth Amendment permitted law enforcement to seize the truck without a warrant.  (Id. at 14-16.)

## IV.  ANALYSIS

### A.  Legality of the Traffic Stop

Law enforcement may briefly detain a person for an investigatory stop "if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity."  United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000) (suppression of evidence seized in traffic stop reversed because appellant twice stopped, in a short period of time, at known drug dealer's house and entered house carrying a backpack each time).  A reasonable suspicion must arise from the totality of circumstances, including both illegal and otherwise innocent activity.  Id. at 917-18.  When examining the totality of the

11

circumstances to determine whether law enforcement had a reasonable, articulable suspicion that the person had or was about to engage in criminal activity, the court must evaluate "all the facts and circumstances within the collective knowledge of the law enforcement officers." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989); United States v. Glinton, 154 F.3d 1245 (11th Cir. 1998) (reasonable suspicion for traffic stop determined from collective knowledge of law enforcement).

Based upon information obtained through surveillance and the agents' knowledge of Mr. Crump's alleged drug trafficking activities, they suspected that Mr. Crump was transporting drugs in the pickup truck when he left Mr. Alvarez's home. Although all the officers and agents personally did not have comprehensive knowledge of the investigation, it was within the collective knowledge of law enforcement. Because there was a reasonable, articulable suspicion that Mr. Crump was engaging in criminal activity, the traffic stop was justified. See Powell, 222 F.3d at 917.

Additionally, "[t]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); see also United States v. Purcell, 236

12

F.3d 1274, 1276 & n.5 (11th Cir. 2001) (finding probable cause for traffic stop where police officer reasonably believed driver was following too closely in violation of traffic law).  Probable cause must be supported by more than a mere suspicion, but does not require the same "'standard of conclusiveness and probability as the facts necessary to support a conviction.'"  United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)).  Finally, the propriety of the traffic stop does not depend on whether the defendant is actually guilty of committing a traffic offense.  United States v. Chanthasouxat, 342 F.3d 1271, 1277-79 (11th Cir. 2003).  Instead, the pertinent question is whether it was reasonable for the officer to believe that a traffic offense had been committed.  Id.

Here, the evidence presented at the hearing demonstrates that additional probable cause existed for the traffic stop.  Deputy Denny testified that the vehicle driven by Mr. Crump crossed over the outside and center lines of its lane, which indicated possible intoxication.  The Court finds that testimony credible.  (See supra note 3.)  A police officer has probable cause to stop a driver whose car is weaving

13

in its lane.[9] <u>United States v. Baugh</u>, 71 F. Supp. 2d 1375, 1377 (M.D. Ga. 1999); <u>see also</u> <u>United States v. Garcia</u>, 284 F. App'x 791, 793 (11th Cir. 2008) (per curiam) (failure to maintain lane provides probable cause for vehicle stop).  Moreover, under <u>Whren</u>, once he witnessed a violation of the state's traffic laws, Deputy Denny's stop of Mr. Crump's vehicle was appropriate regardless of any "pretextual" motivations. 715 U.S. at 813.  In other words, it is irrelevant that the DEA or Task Force agents wanted the vehicle stopped.[10]  Therefore, the initial traffic stop of Mr. Crump's vehicle was lawful, and the Court must examine the legality of the subsequent searches.

---

[9] The relevant statute provides as follows:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this Code section, shall apply:

(1)    A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

O.C.G.A. § 40-6-48(1).

[10] It is also immaterial to the probable cause determination that Deputy Denny did not issue a citation to Mr. Crump.  <u>United States v. Monzon-Gomez</u>, 244 F. App'x 954, 959 n.4 (11th Cir. 2007) (per curiam).

14

## B.     **Detention and Search of Mr. Crump**

The Fourth Amendment protects individuals from unreasonable search and seizure.[11]  A traffic stop is a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979).  Under Terry v. Ohio, 392 U.S. 1 (1968), an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place."  392 U.S. at 20.  Furthermore, the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop.  United States v. Pruitt, 174 F.3d 1215, 1219-20 (11th Cir. 1999).

During a stop, an officer may prolong the detention to investigate the driver's license and the vehicle registration, may remove the driver from the vehicle, and may "pat down" a suspect for weapons.  See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (per curiam);  Terry, 392 U.S. at 24; Purcell, 236 F.3d at 1278; United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999).  Additionally, an officer may ask permission to search the vehicle.  Ohio v. Robinette, 519 U.S. 33, 35-36 (1996). Indeed, "[o]ne of the well-established exceptions to the [Fourth Amendment's]

---

[11] The Fourth Amendment provides in relevant part as follows:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." United States v. Garcia, 890 F.2d 355, 360 (11th Cir.1989); see also Katz v. United States, 389 U.S. 347, 358 (1967).

Consent is valid as long as it is freely and voluntarily given. See United States v. Mendenhall, 446 U.S. 544, 557 (1980). Consent need not, however, be knowing or intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218, 235, 241 (1973). "The question of voluntariness [of consent] is one of fact to be determined from the totality of the circumstances . . . ." United States v. Robinson, 625 F.2d 1211, 1218 (5th Cir. 1980).[12] In determining the voluntariness of a defendant's consent, a reviewing court may examine the following non-exclusive factors: (1) the presence of coercive police procedures; (2) the extent of the defendant's cooperation with the officer; (3) the defendant's awareness of his right to refuse consent;[13] (4) the

_____

[12] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

[13] The Supreme Court has rejected the argument that consent to a search cannot be valid unless the defendant knew that he had a right to refuse the request: "[J]ust as it 'would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning,' so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." Robinette, 519 U.S. at 39-40 (quoting Bustamonte, 412 U.S. at 231).

16

defendant's education and intelligence; and (5) the defendant's belief that no incriminating evidence will be found. <u>Purcell</u>, 236 F.3d at 1281; <u>see also</u> <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 752 (11th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1114 (2003). "A consensual search is manifestly reasonable so long as it remains within the scope of the consent." <u>United States v. Martinez</u>, 949 F.2d 1117, 1119 (11th Cir. 1992).

Here, the searches of the truck and Mr. Crump's person did not unreasonably prolong the traffic stop under the totality of the circumstances. Deputy Denny initiated the stop because the pickup truck was weaving out of its lane and because agents believed Mr. Crump was transporting illegal narcotics. Upon speaking with Mr. Crump, Deputy Denny noted that he had a powdery substance on his lips. Thus, any delay due to Deputy Denny's request for consent to search the truck and Mr. Crump was reasonable given his suspicion that Mr. Crump may have been driving under the influence. Tellingly, Mr. Crump does not contend that the searches unreasonably prolonged the stop–which lasted a total of approximately forty-five minutes. <u>See</u> <u>United States v. Hardy</u>, 855 F.2d 753, 761 (11th Cir. 1988) (approving fifty-minute traffic stop).

17

Additionally, the searches were conducted pursuant to Mr. Crump's valid consent. He does not claim that Deputy Denny or other officers threatened force or violence against him or were verbally abusive. Although there were a number of officers at the location of the stop, there is no evidence that they were brandishing weapons or engaging in inappropriate conduct. Neither has Mr. Crump denied giving consent or indicated that the officers suggested he had no right to refuse the requests to search the truck and his person. There is also no indication that Mr. Crump did not understand he could refuse the search requests. Rather, he gave Deputy Denny verbal consent to search the truck. Likewise, although he did not speak, upon Deputy Denny's later request to search his person, Mr. Crump immediately stood up, turned around, and lifted his arms. Mr. Crump communicated sufficiently well in English when testifying during the September 1, 2011 evidentiary hearing and there is no evidence that he is not of normal intelligence.

On the basis of those facts, the Court finds that defendant voluntarily consented to the search of the truck and his person. Deputy Denny's testimony is buttressed by SA Mueller's statement that he saw Mr. Crump immediately acquiesce to being searched after Deputy Denny approached him. Nothing shows that Mr. Crump was intimidated or browbeaten into consenting to the search of his truck or

18

his person. Thus, the searches of the vehicle and Mr. Crump at the traffic stop were lawful and any evidence recovered as result is admissible at trial.

## C. Second Tow of the Truck and Subsequent Warrant

Finally, the Court turns to defendant's contention that any evidence obtained from the search of the truck pursuant to the June 29 warrant must be excluded because the DEA and Task Force agents unlawfully seized the truck from his constructive possession (i.e., while it was being held for him by Dodd Brothers). Based on the testimonial evidence, it appears that agents actually seized the truck at the scene.[14] However, whether the truck was seized directly from Mr. Crump on June 23 or while held for him by Dodd Brother's on June 24 is immaterial.[15]

Under the automobile exception, the police can make a warrantless search of a vehicle that is readily movable where probable cause exists to believe that the vehicle contains contraband. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per

---

[14] Deputy Denny informed Mr. Dodd that Task Force Agent Gilleland would contact him regarding the truck. (Tr. 67). Similarly, Mr. Dodd independently testified that Deputy Denny told him the truck was for the Task Force and stated that he would not have released the vehicle to anyone without first contacting the Walker County Sheriff's Office. (Id. at 92-93, 96, 98-99.)

[15] There is no contention that the officers seized the truck from a place where Mr. Crump would have a legitimate expectation of privacy. See United States v. Valdes, 876 F.2d 1554, 1558 n.10 (11th Cir. 1989).

19

curiam); <u>United States v. Watts</u>, 329 F.3d 1282, 1286 (11th Cir. 2003) (per curiam). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle. <u>United States v. Tamari</u>, 454 F.3d 1259, 1264 (11th Cir. 2006). Moreover, the Supreme Court has explained that, for the purpose of the automobile exception, there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." <u>Chambers v. Maroney</u>, 399 U.S. 42, 52 (1970); <u>accord</u> <u>Valdes</u>, 876 F.2d at 1560 n.12 ("It follows that a warrantless seizure that is fundamentally fair in a due process sense is also reasonable under the fourth amendment because the interests protected by both due process and the fourth amendment are parallel. Both due process and fourth amendment analysis balance the governmental interest against the owner's rights in the property.").

Here, DEA and Task Force agents had probable cause to believe that Mr. Crump was transporting 200 Oxycodone pills in the gray GMC Sonomoa pickup truck when he was stopped by Deputy Denny. Because Deputy Denny only

recovered a handful of pills during the searches at the June 23 traffic stop, the agents

reasonably deducted that the bulk of the pills were still hidden in the truck, which

was being held by Dodd Brothers for retrieval by Mr. Crump.  Thus, when the agents

had the truck towed to the impound lot on June 24, it was readily mobile and

probable cause existed to believe it contained contraband.  Accordingly, the officers

lawfully seized the pickup truck without a warrant under the automobile exception

to the Fourth Amendment, and evidence subsequently discovered pursuant to the

June 29 search warrant need not be suppressed.

Mr. Crump cites <u>Valdes</u> for the proposition that none of the exceptions to the

Fourth Amendment's warrant requirement apply to this case.  The vehicles at issue

in <u>Valdes</u> had been used in furtherance of a drug transaction and were lawfully

seized by officers pursuant to 21 U.S.C. 881's forfeiture provision–permitting the

Attorney General to seize property which he has probable cause to believe is subject

to civil forfeiture.  876 F.2d at 1557-58; <u>see also</u> 21 U.S.C. § 881(b)(4).  Moreover,

the <u>Valdes</u> Court held that the seizure did not violate the Fourth Amendment,

analogizing the warrantless seizure of vehicles used to transport contraband to the

warrantless seizure of a person suspected of committing a crime.  876 F.2d at 1558-

60; <u>see also</u> <u>id.</u> at 1558 ("We are aware of no Supreme Court precedent that would

21

require us to hold that, on these facts, the agents needed a warrant to seize [the defendants'] automobiles."). Thus, <u>Valdes</u> supports the conclusion that the seizure of Mr. Crump's pickup truck, which the agents reasonably believed contained 200 Oxycodone pills, did not violate the Fourth Amendment.

Additionally, Mr. Crump has failed to make the substantial preliminary showing necessary to obtain a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).[16] Based on the information intercepted via the wiretap on June 23, SA Mueller obtained a search warrant from the undersigned for Mr. Crump's grey GMC Sonoma pickup truck. Given the June 23 recorded conversation between Mr. Crump and Mr. Alvarez and Mr. Crump's presence at, and departure from, Mr. Alvarez's residence on that date, there was probable cause to believe that the 200 Oxycodone pills referenced in their conversation were hidden in the truck. Moreover, Mr. Crump has produced no evidence that the statements SA Mueller made in the affidavit supporting the search warrant application for the truck were false or made

---

[16] In <u>Franks</u>, the Supreme Court held that, where a defendant makes a substantial preliminary showing that an affidavit for a search warrant includes a false statement made knowingly and intentionally, or with reckless disregard for the truth, and where the false statement is necessary to a finding of probable cause, the defendant is entitled to a hearing to determine whether the evidence seized during the execution of that warrant should be admitted at trial. 438 U.S. at 171-72.

AO 72A
(Rev.8/82)

with a reckless disregard for the truth.  Indeed, Mr. Crump corroborated SA Mueller's representations by admitting that he (Crump) had spoken with Mr. Alvarez over the telephone on June 23, and had driven his pickup truck to Mr. Alvarez's residence on that day.

Therefore, for the reasons set forth above, the agents lawfully seized Mr. Crump's truck under the automobile exception to the Fourth Amendment and obtained a valid warrant from the undersigned to search it.  Accordingly, all the evidence recovered from the truck, including 200 Oxycodone pills, is admissible.

## V.    CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Mr. Crump's Motion to Suppress Tangible and Derivative Evidence [312] and Supplemental Motion [344] be **DENIED**.

The Clerk is **DIRECTED** to **TERMINATE** Mr. Crump's Motion to Suppress Statements [313] as **MOOT**.

AO 72A
(Rev.8/82)

**SO RECOMMENDED**, this 21st day of November, 2011.


_Walter E. Johnson_

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL ACTION FILE NO.

4:10-CR-032-HLM-WEJ

BILLY MAC CRUMP,

Defendant.

## ORDER FOR SERVICE OF
## NON-FINAL REPORT AND RECOMMENDATION

Let this Non-Final Report and Recommendation of the United States

Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and the Court's

Local Criminal Rule 58.1(A)(3)(a), be filed and a copy, together with a copy of this

Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if

any, to the Non-Final Report and Recommendation within fourteen days of the

receipt of this Order. Should objections be filed, they shall specify with particularity

the alleged error(s) made (including reference by page number to any transcripts if

applicable) and shall be served upon the opposing party. The party filing objections

will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. Failure to object to this Non-Final Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 58(b)(2).

The Clerk is directed to submit the Non-Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 21st day of November, 2011.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2