IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF
AMERICA

v.

BILLY MAC CRUMP.

CRIMINAL ACTION
FILE NO.
4:10-CR-032-03-HLM

## ORDER

This matter is before the Court on Defendant's Motion to Suppress Tangible and Derivative Evidence [312] and Supplemental Motion [344] ("Motions to Suppress Evidence"), on the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [381], and on Defendant's Objections to the Non-Final Report and Recommendation [389].

# I.  Standard of Review

28 U.S.C.A. § 636(b)(1) requires that in reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1).  The Court therefore must conduct a de novo review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation. Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006); Jeffrey S. by Ernest S. v. State Bd. of Educ., 896 F.2d 507, 513 (11th Cir. 1990); United States v. Gaddy, 894 F.2d 1307, 1315 (11th Cir. 1990); LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988).  If no party files a timely

2

objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error. <u>Macort</u>, 208 F. App'x at 784. Legal conclusions, of course, are subject to de novo review regardless of whether a party specifically objects. <u>United States v. Keel</u>, 164 F. App'x 958, 961 (11th Cir. 2006); <u>United States v. Warren</u>, 687 F.2d 347, 347 (11th Cir. 1982).

## II.  Factual Background

### A.  The Investigation

During the summer of 2010, Drug Enforcement Administration ("DEA") agents intercepted calls to and from Defendant's co-Defendant, Johnny Gregory Alvarez ("Mr. Alvarez"), via a Court-ordered wiretap of Mr. Alvarez's cellular telephone.  (Tr. at 12, , 36-38, 44.)  DEA Special

AO 72A
(Rev.8/82)

Agent ("SA") Christopher Mueller believed that Mr. Alvarez was involved in obtaining Oxycodone pills from Florida and transporting those pills to the Northern District of Georgia and other locations for redistribution. (Id. at 12.)

Based on information gathered through the wiretap, SA Mueller and agents of the Lookout Mountain Judicial Drug Task Force (the "Task Force") conducted surveillance in Rossville, Georgia on June 23, 2010. (Tr. at 12-13, 18, 43-44.) Task Force Agent David Gilleland notified SA Mueller that the agent monitoring the wiretap had intercepted information indicating that Defendant was leaving Mr. Alvarez's residence in a gray GMC Sonoma pickup truck and would be transporting narcotics. (Id. at 13-16, 36-38,

AO 72A
Rev.8/82)

44-45, 69-70, 80-81.)[1] SA Mueller had personally observed Defendant's gray pickup truck parked outside Mr. Alvarez's residence on that day and, based on previously intercepted communications, believed that Defendant was involved in obtaining and transporting Oxycodone pills. (Id. at 13-14, 69, 80.)

SA Muller and Agent Gilleland agreed that local law enforcement should attempt to stop Defendant's vehicle. (Tr. at 15, 18, 36, 42-43, 45.) Agent Gilleland contacted Walker County, Georgia Sheriff's Deputy Kevin Denny, told him that agents believed Defendant was transporting narcotics, and asked him to develop independent probable

---

[1] SA Mueller and other law enforcement officers conducted contemporaneous surveillance of Defendant's vehicle while the telephone calls were being made and during the traffic stop at issue. (Tr. at 15-17.)

5

cause to stop Defendant's vehicle so as not to reveal the ongoing investigation. (Id. at 15-16, 18, 36-37, 45-46, 59.)

## B. The Traffic Stop

Deputy Denny was on regular patrol when Agent Gilleland contacted him and requested that he initiate a traffic stop of the gray GMC Sonoma pickup truck. (Tr. at 45, 48.) Less than five minutes later, Deputy Denny spotted the truck two car lengths ahead of him on Schmidt Road in Walker County, Georgia. (Id. at 49, 51, 59, 70.) Deputy Denny observed the truck cross the white line on the outside of the road by approximately two feet, hug that line, and then travel back into its lane before crossing the road's center line twice. (Id. at 49-50, 59-60.)[2] During that time,

_____

[2]Defendant testified that he did not believe he had crossed out of his lane. (Tr. at 71.) Judge Johnson credited Deputy Denny's

Deputy Denny was able to pass the vehicle in front of him and follow directly behind the pickup truck; he initiated the patrol car's blue lights after traveling an additional one-eighth of a mile. (Id. at 49-51, 60, 70-71.) Defendant immediately pulled over in a gas station parking lot. (Id. at 50-51, 71.)

## C. Search of Defendant and the Pickup Truck

SA Mueller had been following Defendant's vehicle along with other law enforcement officers; he lost sight of the pickup truck at one point and arrived at the scene soon after Deputy Denny initiated the stop. (Tr. at 14-15, 17, 19,

---

testimony that Defendant crossed over the side and center lines of the roadway, because Deputy Denny was traveling behind Defendant and had an excellent vantage point to view the pickup truck's movements. (Non-Final Report & Recommendation at 3 n.3.) The Court sees no reason to disturb that credibility determination.

AO 72A
(Rev.8/82)

38.) SA Mueller parked across the street and observed from his vehicle the subsequent searches of Defendant and the truck. (Id. at 19-21, 25, 38-39.)

Deputy Denny approached the driver's side of the truck and recognized Defendant as its driver. (Tr. at 51, 72.) Defendant stated that he had been trying to give his dog, which was riding in the passenger seat, water, and that he might have drifted out of the lane. (Id. at 60.) Deputy Denny asked Defendant to exit the truck and come to the rear of the vehicle. (Id. at 52, 72.) Defendant did so, leaving the driver's side door open. (Id. at 61.) Deputy Denny spoke with Defendant and noticed a powdery residue on his lips and tongue. (Id. at 52.) In Deputy Denny's experience, he has encountered people who have eaten

8

illegal substances, such as pills and marijuana, in order to hide them. (Id. at 52-53.) Deputy Denny asked Defendant if he had anything illegal and Defendant stated that he did not. (Id. at 52.)

Deputy Denny asked Defendant for permission to look through the pickup truck, and Defendant consented. (Tr. at 53-54, 72.) Before beginning the vehicle search, Deputy Denny patted down Defendant for officer safety and recovered a pocket knife from his pants pocket. (Id. at 53, 60-61, 72.) Deputy Denny then went to the driver's side of the truck and began searching the cab while Defendant sat on the truck's tailgate with his dog. (Id. at 17, 19-21, 38, 54-55, 61-62, 72-73.) While searching, Deputy Denny glanced at Defendant and noticed that he was fidgeting and feeling

9

around in his pants pocket. (Id. at 54, 61-62, 73.)[3] At about

that time, Deputy Redwine and Deputy Donny Brown arrived

at the scene. (Id. at 21, 64-65.) SA Mueller also observed

Defendant jumping around and digging in his pocket and

radioed Deputies Redwine and Brown to ask if they saw

Defendant's behavior. (Id. at 21-22, 38.)

Deputy Denny returned to the tailgate and asked

Defendant what he was doing, and Defendant stated that he

was looking for his cellular telephone. (Tr. at 54-55, 63, 74.)

Deputy Denny asked Defendant for permission to search his

---

[3]Defendant testified that he was looking for his cellular telephone, which he usually kept in a holster on his hip. (Tr. at 81.) The Court agrees with Judge Johnson that "[w]hether [Defendant] was feeling around on his hip or in his pants pocket is irrelevant for the purposes of this analysis, as [Defendant] admits to fidgeting around the area of his pants pocket while detained." (Non-Final Report & Recommendation at 5 n.4.)

10

pockets, and Defendant stood up from the tailgate, turned around, and raised his arms above his waist. (Id. at 20, 24-25, 39-41, 54, 63.)[4] Deputy Denny reached into Defendant's pants pocket and removed nine loose pills. (Id. at 25, 38-39, 54, 63, 74, 109.)

Deputy Denny asked Deputy Brown for help identifying the pills, and Deputy Brown determined that the pills were Oxycodone. (Tr. at 54-55, 64-65.) Deputy Denny resumed searching the truck's cab, assisted by Deputy Redwine. (Id. at 63-64, 66, 74-75.) The deputies recovered a spoon, a

---

[4]Defendant testified that, upon returning to the tailgate, Deputy Denny directed him to stand up and then searched his pockets. (Tr. at 74.) Judge Johnson credited Deputy Denny's testimony that he asked and received Defendant's permission before searching his pockets. (Non-Final Report & Recommendation at 6 n.5.) The Court sees no reason to disturb that credibility determination.

AO 72A
(Rev.8/82)

box of nasal decongestant, and two syringes, but no additional pills.  (Id. at 56.)[5]

Deputy Denny then approached Defendant and asked him what the pills were, and Defendant stated that the pills were for his stomach and that he had obtained them in Mexico several years ago.  (Tr. at 55, 63, 74.)  Deputy Denny advised Defendant that the pills were Oxycodone, and Defendant then stated that he did not have anything else to say and wanted to speak with a lawyer.  (Id. at 55, 58, 74.)  Deputy Denny took Defendant into custody for possession of narcotics without a prescription, handcuffed

---

[5]Defendant testified that, after completing the vehicle search, Deputy Denny searched Defendant's pockets a third time and found an additional Oxycodone pill, for a total of ten Oxycodone pills.  (Tr. at 74-75.)

AO 72A
Rev.8/82)

him, and placed him in the back of a patrol car.  (Id. at 25, 55-56.)

## D.  Impounding the Pickup Truck

Deputy Denny informed Agent Gilleland that he was having the truck towed and impounded, and Agent Gilleland requested that a "hold" be placed on the vehicle until he released it. (Tr. at 56-57.) Deputy Denny asked Defendant if he had a preference as to the tow company that would retrieve the truck, and Defendant requested Dodd Brothers Towing ("Dodd Brothers").  (Id. at 33, 56-57, 67, 75.) Defendant was under the impression that, after Dodd Brothers towed the truck, he would be able to retrieve it at any time. (Id. at 76-77.)  At that point, the traffic stop had lasted approximately forty-five minutes.  (Id. at 57-58.)

13

AO 72A
Rev.8/82)

Deputy Denny did not issue Defendant a citation for failure to maintain his lane. (Id. at 58.)

After the tow truck arrived, Deputy Denny advised the driver, business manager Mark Dodd, that Agent Gilleland would contact him. (Tr. at 57-58, 67, 75-76, 84-85.) Deputy Denny then transported Defendant to Chickamauga, where another patrol car later transported him to the Walker County Jail (the "Jail"). (Id.)[6] SA Mueller believed that Dodd Brothers would transport Defendant's truck to a secure tow lot. (Id. at 26, 33-34, 101.) Because Dodd Brothers' tow lot is not secure, however, Mr. Dodd towed

---

[6]Mr. Dodd testified that Deputy Denny did not direct him to take the truck to the Jail, but did state that the tow was for the Task Force. (Tr. at 92-93, 98-99.) SA Mueller did not place a "hold" on the truck himself. (Id. at 102-103.)

14

⊃ 72A
tev.8/82)

the truck to his residence.  (Id. at 26-27, 34, 84-85, 89, 94-95, 98.)

On June 24, SA Mueller and Agent Gilleland listened to the prior day's conversation between Defendant and Mr. Alvarez that had prompted the traffic stop at issue.  (Tr. 14, 19, 100-101.)  They determined that Defendant likely was transporting 200 Oxycodone pills in the truck.  (Id. at 100-101.)  SA Mueller was concerned that the truck could have been released to Defendant, and he directed Task Force agents to impound the vehicle as evidence of a crime.  (Id. at 34-35, 68, 86, 101-102.)  Agent Gilleland and another officer drove to Mr. Dodd's residence and asked him to transport the vehicle to the Walker County Sheriff's Office impound lot.  (Id. at 86-87, 97, 101.)  At that point, the truck

Ͻ 72A
ːev.8/82)

had been stored at Mr. Dodd's residence for approximately twenty-four hours. (Id.)

According to Defendant, he was released from the Jail on June 24 and called Dodd Brothers in order to retrieve the truck. (Tr. at 77.) The person who answered the telephone stated that Defendant could not retrieve the truck because someone from the Walker County Sheriff's Office had just called and asked that the truck be moved to the impound lot. (Id. at 77, 79, 95-97.)[7] Defendant testified that he paid $125.00 in towing charges. (Id. at 78.)

On June 26, 2010, Deputy Denny returned to work at the Walker County Sheriff's Office and observed the pickup

---

[7]Mr. Dodd testified that he would have contacted the Walker County Sheriff's Office before allowing Defendant to retrieve the truck. (Tr. at 96.)

16

truck in the impound lot with evidence tape across the doors and a blue tarp covering the bed. (Tr. at 68.) On June 29, 2010, agents searched the vehicle pursuant to a warrant issued by Judge Johnson. (Id. at 39-40.) SA Mueller testified that he was not aware of any search of the vehicle after it was towed and before his receipt of the search warrant. (Id. at 40.)

17

## II.  Procedural Background

This case began on July 20, 2010, through a criminal complaint against Mr. Alvarez and Jesse Wilburn Peardon. (Docket Entry No. 1.) On February 1, 2011, a federal grand jury sitting in the Northern District of Georgia returned a multi-count Superseding Indictment with a forfeiture provision against thirteen individuals, including Defendant. (Docket Entry No. 53.)  Count One of the Superseding Indictment charges that Defendant knowingly conspired to possess with intent to distribute Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Super. Indict. Count One.) Count Six of the Superseding Indictment alleges that Defendant knowingly possessed with intent to distribute Oxycodone, also in violation those code sections.   (Id.

Ͻ 72A
ᴇᴇv.8/82)

Count Six.) Count Eleven of the Superseding Indictment alleges that Defendant knowingly conspired to conduct financial transactions involving proceeds from the sale of said substance, in violation of 18 U.S.C. § 1956. (Id. Count Eleven.)

On July 27, 2011, Defendant filed his Motion to Suppress Evidence. (Docket Entry No. 312.) On August 25, 2011, Defendant filed a Supplemental Motion to Suppress Evidence. (Docket Entry No. 344.) On September 1, 2011, Judge Johnson held an evidentiary hearing on the Motions to Suppress Evidence. (Docket Entry No. 346.)

On November 21, 2011, Judge Johnson issued his Non-Final Report and Recommendation. (Docket Entry No.

19

381.) Judge Johnson recommends that the Court deny the Motions to Suppress Evidence. (Id.)

Defendant has filed Objections to the Non-Final Report and Recommendation. (Docket Entry No. 389.) The Court concludes that no response from the Government is necessary, and therefore finds that this matter is ripe for resolution.

## IV. Discussion

### A. Legality of the Traffic Stop

Law enforcement officers may briefly detain an individual for an investigatory stop "if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." United States v. Powell, 222 F.3d 913,

⊃ 72A
₹ev.8/82)

917 (11th Cir. 2000). A reasonable suspicion must arise from the totality of circumstances, including both illegal and otherwise innocent activity. Id. at 917-18. When examining the totality of the circumstances to determine whether law enforcement had a reasonable, articulable suspicion that the person had or was about to engage in criminal activity, a court must evaluate "all the facts and circumstances within the collective knowledge of the law enforcement officers." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989); see also United States v. Glinton, 154 F.3d 1245 (11th Cir. 1998) (same).

The Court agrees with Judge Johnson that "[b]ased upon information obtained through surveillance and the agents' knowledge of [Defendant's] alleged drug trafficking

⊃ 72A
tev.8/82)

activities, they suspected that [Defendant] was transporting drugs in the pickup truck when he left Mr. Alvarez's home." (Non-Final Report and Recommendation at 12.) The Court further agrees with Judge Johnson that "[a]lthough all the officers and agents personally did not have comprehensive knowledge of the investigation, it was within the collective knowledge of law enforcement." (Id.) Under those circumstances, Judge Johnson correctly found that the traffic stop was justified "[b]ecause there was a reasonable, articulable suspicion that [Defendant] was engaging in criminal activity." (Id.)[8]

---

[8]In his Objections, Defendant argues that "law enforcement's actions amounted to mere curiosity or an inarticulable hunch, not to a level [of] reasonable, articulable suspicion of criminal activity." (Def.'s Objs. at 1.) The Court agrees with Judge Johnson that the evidence established that the officers had a reasonable, articulable suspicion that Defendant was engaged in criminal activity, and

Further, "[t]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Purcell, 236 F.3d 1274, 1276 & n.5 (11th Cir. 2001). Probable cause must be supported by more than a mere suspicion, but does not require the same "'standard of conclusiveness and probability as the facts necessary to support a conviction.'" United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)). The propriety of the traffic stop also does not depend on whether the defendant is actually guilty of committing a traffic offense. United States v.

_____

overrules this Objection.

23

Chanthasouxat, 342 F.3d 1271, 1277-79 (11th Cir. 2003).

Rather, the relevant question is whether it was reasonable

for the officer to believe that a traffic offense had been

committed. Id.

The Court agrees with Judge Johnson that "the

evidence presented at the hearing demonstrates that

additional probable cause existed for the traffic stop." (Non-

Final Report & Recommendation at 13.) Judge Johnson

noted that "Deputy Denny testified that the vehicle driven by

[Defendant] crossed over the outside and center lines of its

lane, which indicated possible intoxication," and he found

that testimony credible. (Id.)[9] As Judge Johnson

---

[9]In his Objections, Defendant argues that Judge Johnson
erroneously credited Deputy Denny's testimony over Defendant's
testimony. (Def.'s Objs. at 1.) As discussed supra, the Court
cannot find that this credibility determination was erroneous. The

24

recognized, "[a] police officer has probable cause to stop a driver whose car is weaving in its lane." (Id. at 13-14 (collecting cases).) Judge Johnson correctly observed that, once Deputy Denny witnessed a violation of the traffic laws, his stop of Defendant's vehicle "was appropriate regardless of any 'pretextual' motivations." (Id. at 14 (citing Whren, 715 U.S. at 813).) Judge Johnson also correctly concluded that, under those circumstances, "it is irrelevant that the DEA or Task Force agents wanted the vehicle stopped." (Id.)[10] The Court therefore agrees with Judge Johnson that the initial traffic stop of Defendant's vehicle was lawful. The

Court therefore overrules this Objection.

[10]Further, as Judge Johnson noted, "[i]t is also immaterial to the probable cause determination that Deputy Denny did not issue a citation to [Defendant]." (Non-Final Report & Recommendation at 14 n.10.)

25

Court consequently adopts this portion of the Non-Final Report and Recommendation, overrules Defendant's corresponding Objections, and denies this portion of the Motions to Suppress Evidence.

## B. Detention and Search of Defendant

The Fourth Amendment protects individuals from unreasonable search and seizure.[11]  A traffic stop is a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979).  Under Terry v. Ohio, 392 U.S. 1 (1968), an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first

---

[11]The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

Ɔ 72A
ʇev.8/82)

place." 392 U.S. at 20. Additionally, the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. United States v. Pruitt, 174 F.3d 1215, 1219-20 (11th Cir. 1999).

During a traffic stop, an officer may prolong the detention to investigate the driver's license and the vehicle registration, may remove the driver from the vehicle, and may "pat down" a suspect for weapons. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (per curiam); Terry, 392 U.S. at 24; Purcell, 236 F.3d at 1278; United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999). Further, an officer may ask permission to search the vehicle. Ohio v. Robinette, 519 U.S. 33, 35-36 (1996). Indeed, "[o]ne of the well-established exceptions to the [Fourth Amendment's]

27

probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." <u>United States v. Garcia</u>, 890 F.2d 355, 360 (11th Cir.1989); <u>see also</u> <u>Katz v. United States</u>, 389 U.S. 347, 358 (1967).

Consent to search is valid as long as it is freely and voluntarily given. <u>United States v. Mendenhall</u>, 446 U.S. 544, 557 (1980). Consent to a search, however, need not be knowing or intelligent. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 235, 241 (1973). "The question of voluntariness [of consent] is one of fact to be determined from the totality of the circumstances . . . ." <u>United States v. Robinson</u>, 625 F.2d 1211, 1218 (5th Cir. 1980).[12] When determining

---

[12]The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc).

⊃ 72A
:ev.8/82)

whether a defendant's consent is voluntary, a reviewing court may examine a number of non-exclusive factors, including: (1) the presence of coercive police procedures; (2) the extent of the defendant's cooperation with the officer; (3) the defendant's awareness of his right to refuse consent;[13] (4) the defendant's education and intelligence; and (5) the defendant's belief that no incriminating evidence will be found. <u>Purcell</u>, 236 F.3d at 1281. "A consensual search is manifestly reasonable so long as it remains within the scope of the consent." <u>United States v. Martinez</u>, 949 F.2d 1117, 1119 (11th Cir. 1992).

---

[13]As Judge Johnson noted, "[t]he Supreme Court has rejected the argument that consent to a search cannot be valid unless the defendant knew that he had a right to refuse the request." (Non-Final Report & Recommendation at 16 n.13) (quoting <u>Robinette</u>, 519 U.S. at 39-40).)

Ɔ 72A
ꞮEV.8/82)

The Court agrees with Judge Johnson that "the searches of the truck and [Defendant's] person did not unreasonably prolong the traffic stop under the totality of the circumstances." (Non-Final Report & Recommendation at 17.) As Judge Johnson noted:

> Deputy Denny initiated the stop because the pickup truck was weaving out of its lane and because agents believed [Defendant] was transporting illegal narcotics. Upon speaking with [Defendant], Deputy Denny noted that he had a powdery substance on his lips. Thus, any delay due to Deputy Denny's request for consent to search the truck and [Defendant] was reasonable given his suspicion that [Defendant]may have been driving under the influence. Tellingly, [Defendant] does not contend that the searches unreasonably prolonged the stop—which lasted a total of approximately forty-five minutes. See United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988) (approving fifty-minute traffic stop).
>
> Additionally, the searches were conducted pursuant to [Defendant's] valid consent. He does

30

not claim that Deputy Denny or other officers threatened force or violence against him or were verbally abusive. Although there were a number of officers at the location of the stop, there is no evidence that they were brandishing weapons or engaging in inappropriate conduct. Neither has [Defendant] denied giving consent or indicated that the officers suggested he had no right to refuse the requests to search the truck and his person. There is also no indication that [Defendant] did not understand he could refuse the search requests. Rather, he gave Deputy Denny verbal consent to search the truck. Likewise, although he did not speak, upon Deputy Denny's later request to search his person, [Defendant] immediately stood up, turned around, and lifted his arms. [Defendant] communicated sufficiently well in English when testifying during the September 1, 2011 evidentiary hearing and there is no evidence that he is not of normal intelligence.

(Id. at 17-18.) The Court agrees with Judge Johnson that Defendant voluntarily consented to the search of the truck and of his person, that the searches of the truck and

31

Defendant at the traffic stop were lawful, and that any evidence recovered as a result of those searches is admissible at trial. (Id. at 18-19.)[14] The Court therefore adopts this portion of the Non-Final Report and Recommendation, overrules Defendant's corresponding Objections, and denies the Motions to Suppress Evidence

---

[14]As Judge Johnson noted:

> Deputy Denny's testimony is buttressed by SA Mueller's statement that he saw [Defendant] immediately acquiesce to being searched after Deputy Denny approached him. Nothing shows that [Defendant] was intimidated or browbeaten into consenting to the search of his truck or his person.

(Non-Final Report & Recommendation at 18-19.) In his Objections, Defendant argues that Judge Johnson erroneously credited the law enforcement officers' testimony over Defendant's testimony on the issue of consent. (Def.'s Objs. at 1-2.) As discussed supra, the Court cannot find that this credibility determination was erroneous. The Court therefore overrules this Objection, and finds that Defendant consented to the search of his person.

32

relating to the searches of the truck and Defendant at the traffic stop.

### C. Second Tow of the Truck and Subsequent Warrant

Finally, the Court addresses Defendant's contention that the Court must suppress any evidence obtained from the search of the truck pursuant to the June 29 warrant because the DEA and Task Force agents unlawfully seized the truck from Defendant's constructive possession--that is, while it was being held for him by Dodd Brothers. The Court agrees with Judge Johnson that, "[b]ased on the testimonial evidence, it appears that agents actually seized the truck at the scene." (Non-Final Report & Recommendation at 19.)[15]

---

[15]Deputy Denny informed Mr. Dodd that Agent Gilleland would contact him regarding the truck. (Tr. at 67). Similarly, Mr. Dodd independently testified that Deputy Denny told him the truck was for the

) 72A
ᴇv.8/82)

Judge Johnson, however, correctly noted that, "whether the truck was seized directly from [Defendant] on June 23 or while held for him by Dodd Brother's on June 24 is immaterial."[16] (Id.)

Under the automobile exception, police can make a warrantless search of a vehicle that is readily movable where probable cause exists to believe that the vehicle contains contraband. <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940 (1996) (per curiam); <u>United States v. Watts</u>, 329 F.3d 1282, 1286 (11th Cir. 2003) (per curiam). Probable

---

Task Force and stated that he would not have released the vehicle to anyone without first contacting the Walker County Sheriff's Office. (<u>Id.</u> at 92-93, 96, 98-99.)

[16]As Judge Johnson noted, "[t]There is no contention that the officers seized the truck from a place where [Defenadnt] would have a legitimate expectation of privacy. (Non-Final Report & Recommendation at 19 n.15.)

34

cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle. <u>United States v. Tamari</u>, 454 F.3d 1259, 1264 (11th Cir. 2006). The Supreme Court has explained that, for the purpose of the automobile exception, there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." <u>Chambers v. Maroney</u>, 399 U.S. 42, 52 (1970); <u>accord</u> <u>United States v. Valdes</u>, 876 F.2d 1554, 1560 n.12 (11th Cir. 1989) ("It follows that a warrantless seizure that is fundamentally fair in a due process sense is

also reasonable under the fourth amendment because the interests protected by both due process and the fourth amendment are parallel. Both due process and fourth amendment analysis balance the governmental interest against the owner's rights in the property.").

The Court agrees with Judge Johnson that "DEA and Task Force agents had probable cause to believe that [Defendant] was transporting 200 Oxycodone pills in the gray GMC [Sonoma] pickup truck when he was stopped by Deputy Denny." (Non-Final Report & Recommendation at 19-20.) As Judge Johnson noted:

> Because Deputy Denny only recovered a handful of pills during the searches at the June 23 traffic stop, the agents reasonably deducted that the bulk of the pills were still hidden in the truck, which was being held by Dodd Brothers for retrieval by [Defendant]. Thus, when the agents had the truck

36

towed to the impound lot on June 24, it was readily mobile and probable cause existed to believe it contained contraband. Accordingly, the officers lawfully seized the pickup truck without a warrant under the automobile exception to the Fourth Amendment, and evidence subsequently discovered pursuant to the June 29 search warrant need not be suppressed.

(Id. at 20-21.) Judge Johnson further correctly concluded that Valdes did not require suppression of the evidence discovered under the June 29 search warrant. (Id. at 21-22.)

Additionally, Judge Johnson properly found that Defendant failed to make the preliminary showing required to obtain a hearing under Franks v. Delaware, 438 U.S. 154

AO 72A
Rev.8/82)

(1978).  (Id. at 22.)[17]  Judge Johnson also correctly observed that:

> Based on the information intercepted via the wiretap on June 23, SA Mueller obtained a search warrant from the undersigned for [Defendant's] gr[a]y GMC Sonoma pickup truck. Given the June 23 recorded conversation between [Defendant] and Mr. Alvarez and [Defendant's] presence at, and departure from, Mr. Alvarez's residence on that date, there was probable cause to believe that the 200 Oxycodone pills referenced in their conversation were hidden in the truck. Moreover, [Defendant] has produced no evidence that the statements SA Mueller made in the affidavit supporting the search warrant application for the truck were false or made with a reckless disregard for the truth. Indeed, [Defendant] corroborated SA

---

[17]In Franks, the Supreme Court held that, where a defendant makes a substantial preliminary showing that an affidavit for a search warrant includes a false statement made knowingly and intentionally, or with reckless disregard for the truth, and where the false statement is necessary to a finding of probable cause, the defendant is entitled to a hearing to determine whether the evidence seized during the execution of that warrant should be admitted at trial. 438 U.S. at 171-72.

38

Mueller's representations by admitting that he ([Defendant]) had spoken with Mr. Alvarez over the telephone on June 23, and had driven his pickup truck to Mr. Alvarez's residence on that day.

(Id. at 22-23.)

The Court agrees with Judge Johnson that the agents lawfully seized Defendant's truck under the automobile exception to the Fourth Amendment and also obtained a valid warrant to search it. (Non-Final Report & Recommendation at 23.) Judge Johnson correctly found that "all the evidence recovered from the truck, including 200 Oxycodone pills, is admissible." (Id.) The Court consequently adopts this portion of the Non-Final Report and Recommendation, and denies Defendant's Motions to

□ 72A
!ev.8/82)

Suppress Evidence relating to the evidence obtained during

the subsequent search of Defendant's truck.[18]

---

[18]Defendant's Objections did not specifically address the portion of the Non-Final Report and Recommendation relating to the search of the truck pursuant to the June 29 warrant. (Docket Entry No. 389.)

ɔ 72A
:ev.8/82)

## V.   Conclusion

ACCORDINGLY, the Court **ADOPTS** the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [381], **OVERRULES** Defendant's Objections to the Non-Final Report and Recommendation [389], **DENIES** Defendant's Motion to Suppress Tangible and Derivative Evidence [312], and **DENIES** Defendant's Supplemental Motion [344].

IT IS SO ORDERED, this the 12 day of December, 2011.

_____
UNITED STATES DISTRICT JUDGE

72A
ev.8/82)